**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective Plaintiffs
and the Class*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEVENDRANATH BACHAN, *on behalf of himself, FLSA Collective Plaintiffs, and the Class,*<br><br>Plaintiff,<br><br>v.<br><br>GENUINE PARTS COMPANY,<br><br>Defendant. | Case No.<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff DEVENDRANATH BACHAN ("Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against GENUINE PARTS COMPANY ("Defendant" or "GPC"), and states as follows:

<u>**INTRODUCTION**</u>

1.     Plaintiff alleges, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including overtime premiums, due to time-shaving; (2) liquidated damages; and (3) attorneys' fees and costs.

2.     Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL") that he and others similarly situated are entitled to recover from Defendant: (1) unpaid wages, including

overtime premiums, due to time-shaving; (2) compensation for late payment of wages,   (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

3.       Defendant operates a distribution and retail company engaged in the servicing of automotive and industrial parts in 49 States.  Putative collective members are all current and former employees of Defendant, who were victims of Defendant's underpayment and untimely of payment of wages, including overtime.   Defendant instituted a nationwide policy of not compensating the thirty (30) minute lunch-breaks of employees, despite employees being forced to work through the entirety of their lunch.  While clocked-out for lunch, employees were required to eat at their station, respond to phone calls, and aid in customer requests.   Moreover, each of Defendant's stores share a similar design and clock-in procedure.  In all of Defendant's stores, Defendant keeps its clock-in device in the back of the store.  Before utilizing Defendant's punch-in device, Defendant forces employees to walk through the entirety of each location, which forces employees to walk past both managers and customers.  Inevitably, the placement of the clock-in device results in customers and managers stopping employees with pre-clock-in requests, which go uncompensated.  Defendant's clock-in procedure is designed to, and in fact does, produce significant pre-shift off-the-clock work.  Plaintiff brings this wage and hour class action on behalf of himself and all non-exempt individuals employed by Defendant, who during the applicable state and federal limitations periods up to and including the present (the "Class Period"), were similarly underpaid by Defendant in violation of protections afforded under the FLSA and NYLL.

4.       Plaintiff further alleges individual claims pursuant to NYLL §740, due to Defendant's unlawful retaliation against Plaintiff for his complaint, and for threatening complaint, of Defendant's misappropriating New York City funds, and he brings this action against Defendant to recover: (1) economic damages, (2) compensatory damages, (3) punitive damages, and (4)

attorneys' fees and costs.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

## PARTIES

7.      Plaintiff DEVENDRANATH BACHAN, for all relevant time periods, was a resident of Suffolk County, New York.

8.      Defendant operates a chain of auto-part retail stores, operating primarily under the brand name "National Automotive Parts Association" with more than 1,500 stores across the Country and New York State ("Store Locations"). *See* **Exhibit A**, Listing Genuine Parts Companies New York Store Locations.

9.      All the Store Locations are managed by the same executive management team operating from the same Headquarters, with the same wage policies and procedures.  Further each Store Location is engaged in related activities, share common ownership, and have a common business purpose:

        i.      According to the SEC filing of GPC, GPC through its executive management owns and operates 1,535 stores and 77 distribution centers nationally.  Further, GPC franchises its NAPA Auto Parts brand out to others an additional adding an additional 5,000 NAPA Auto Parts stores across the country.  *See* **Exhibit B**, 10-K filed with the SEC.

ii.     Defendant GPC maintains a centralized payroll department. GPC operates a single career page allowing interested persons to apply to positions relating to all Store Locations.  Despite listing open positions at all Store Locations, Defendant GPC's career page only offers payroll positions, marketing positions, executive management positions, IT positions, and other administrative roles at Defendant GPC's headquarters in Atlanta, Georgia, or its subsidiaries headquarters in Birmingham, Alabama. *See* **Exhibit C;** *compare with* **Exhibit D**.

iii.    GPC's payroll specialists all work from GPC's headquarters located at 2999 Wildwood Pkwy, Atlanta, GA 30339, and this centralized office sets compensation policies for all Store Locations *See* id.

iv.     Plaintiff and other employees were transferred between Store Locations. When employees move to differing Store Locations, they are subject to the same wage and hour policies and procedures established by Defendant GPC. *See* id.

v.      All GPC Store Locations share common gift cards redeemable at any Store Locations. *See* **Exhibit E**.

10.     Defendant GENUINE PARTS COMPANY is a foreign business corporation organized under the laws of the State of Georgia.  Defendant GENUINE PARTS COMPANY operates under the laws of the State of New York with an address for service of process located at 28 Liberty St., New York, NY, 10005.

11.     At all relevant times, Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, and the state laws within which they operate.

12. At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members was directly essential to the businesses operated by Defendant.

## MULTISTATE - FLSA COLLECTIVE ACTION ALLEGATIONS

13. Plaintiff brings claim for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of non-exempt employees, including warehouse associates, delivery drivers, counter associates, store stock associates, and loaders, employed by Defendant wherever they have stores nationwide on or after the date that is three years before the filing of the Complaint in this case as defined herein ("FLSA Collective Plaintiffs").

14. At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them proper overtime premiums for all hours worked due to timeshaving. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

15. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. § 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendant. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

16. Plaintiff brings claim for relief pursuant to the Federal Rules of Civil Procedure ("FRCP") Rule 23, on behalf of on behalf of non-exempt employees on behalf of non-exempt employees, including warehouse associates, delivery drivers, counter associates, store stock

associates, and loaders, employed by Defendant in New York State on or after the date that is six (6) years before the filing of the Complaint in this case (the "Class Period").

17.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendant. The hours assigned and worked, the position held, and rates of pay for each Class member may also be determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under FRCP 23.

18.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class.

19.     Plaintiff's claim is typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same Defendant's corporate practices of (i) failing to pay proper wages, including overtime premiums at one-and-one half times their hourly rates for hours in excess of forty (40) each workweek, due to time-shaving; (ii) failing to properly compensate on a weekly basis pursuant to NYLL 191, (iii) failing to provide Class members with proper wage statements with every payment of wages; and (iv) failing to properly provide wage notices to Class members, at date of hiring and annually. Defendant's company-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member.

20.     Defendant's corporate-wide policies and practices affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

21.     Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation, and have previously represented plaintiffs in wage and hour cases.

22.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for

Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

23.     Defendant and other employers throughout the state violate relevant state's wage and hour statutes. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

24.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)   Whether Defendant employed Plaintiff and Class Members within the meaning of New York's labor laws;

b)   What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay the Class Members properly;

c)   At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiff and Class Members for their work;

d)   Whether Defendant properly notified Plaintiff and Class Members of their pay rates;

e)   Whether Defendant paid Plaintiff and Class Members the proper compensation, including overtime compensation;

f)   Whether Defendant compensated Plaintiff and Class Members for all hours worked;

g)   Whether Defendant compensated Class Members in a timely manner pursuant to NYLL 191;

h)   Whether Defendant provided proper wage statements to Plaintiff and Class Members; and

i)   Whether Defendant provided proper wage and hour notices to Plaintiff and Class Members.

**STATEMENT OF FACTS**

*Wage and Hour Claims*:

25.    In or about June 2013, Plaintiff DEVENDRANATH BACHAN was hired by Defendant to work as a serviceman at the store located at 3003 Rayview Avenue, Long Island City. After approximately 2 years working at this location, Defendant transferred Plaintiff to work at their store located at 1973 38th St, Queens, NY 11105 where Plaintiff worked until the end of his employment on June 4, 2022.

26.    At the start of Plaintiff's employment with Defendant, Plaintiff earned a base hourly rate of approximately $15.00 an hour.  From the start of his employment until 2020, Plaintiff received a raise of 25 to 50 cents twice a year.  When Plaintiff's employment with Defendant ended, he was earning a base hourly rate of $19.63 an hour.

27.    At all times during Plaintiff's employment, Plaintiff was compensated on a bi-weekly basis, i.e., once every two weeks.

28.    FLSA Collective Plaintiffs and Class members received similar compensation as Plaintiff and were similarly compensated on a biweekly basis, i.e., once every two weeks.

29.     From the beginning of his employment with Defendant until 2019, Plaintiff was scheduled to work from 3:00 p.m. to 11:00 p.m., five (5) days a week, totaling of forty (40) hours per week. After 2019, Plaintiff was scheduled to work from 1:00 p.m. to 9:30 p.m., five days a week, totaling forty-two-and-one-half (42.5) hours.  Despite Plaintiff's schedule, Plaintiff always worked hours in excess of his schedule for which he was not compensated.

30.     All throughout Plaintiff's employment with Defendant, Plaintiff was required to clock out each day for a thirty (30) minute lunch break.  Despite clocking out each day, Defendant demanded employees work through lunch by requiring employees to 'man the phones' during lunch, and respond to any customer issues.  As a consequence of the tasks required by Defendant, Plaintiff and Class Members were required to stay on-site and work through their meal-breaks. Despite working during these breaks, Defendant would still deduct thirty (30) minutes from each day of Plaintiff's and Class member's compensable time. FLSA Collective Plaintiffs and Class members similarly suffered from Defendant's same wrongful policy of time-shaving as Plaintiff.

31.     In addition to engaging in uncompensated work during meal breaks, Plaintiff, Collective Plaintiffs and Class members were required to perform 15 minutes of pre-shift work twice per week.  Defendant designs all Store Locations to force Plaintiff, Collective Plaintiffs, and Class members to walk through the 'shop' floor to reach Defendant's clock-in machine.  At least twice per-week, for at least 15 minutes per instances, Plaintiff, Collective Plaintiffs, and Class members are stopped on the floor on the way to clock-in by managers or customers and are required to engage in off-the-clock per-shift work.

32.     As a result of Defendant's wrongful policy of time-shaving Plaintiff and Class members' hours, Plaintiff was not properly compensated for all of his wages, including overtime premiums for all hours worked over forty (40).  FLSA Collective Plaintiffs and Class members

were similarly not properly compensated for their wages earned, including overtime premiums for all hours worked over forty (40).

33. Defendant knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs and Class members the correct overtime rate of one-and-one half times employees' proper regular rate.

34. Defendant knowingly and willfully operated their business with a policy of not providing a proper wage notice to Plaintiff and other non-exempt employees at the beginning of employment and annually thereafter, in violation of the applicable state wage laws.

35. Defendant knowingly and willfully operated their business with a policy of not providing Plaintiff with proper wage statements at all relevant times. Class members also did not receive proper wage statements, in violation of the applicable wage laws.

36. In failing to provide proper wage statements and notices, Defendant have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendant's failure to provide such notices trivializes the importance of these notices in protecting Plaintiffs' interest in ensuring proper pay. Despite Defendant's conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being properly paid.

37. Here, Defendant's failure goes beyond generating a risk of harm to Plaintiff and Class members. Defendant's conduct actually harmed Plaintiff and Class members. Defendant's

failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendant's calculations, allowed Defendant to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiff and Class members' rights.  This conduct ensured Defendant's ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law.  Moreover, Defendant's failure to provide a wage notice to employees allowed Defendant to hide their responsibility and deprive employees of timely compensation.

38.     The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiff and Class members.  This delayed payment caused Plaintiff to struggle to timely pay bills.  Class members similarly struggle to timely pay debts due to Defendant's continued attempts to hide wrongdoing from employees.

39.     Throughout his employment, Defendant regularly failed to pay Plaintiff his wages within seven (7) days of the end of the week in which Plaintiff earned them, in violation of NYLL § 191(1)(a)(i).[1]  Defendant provided Plaintiff's wages biweekly despite NYLL requiring employees like Plaintiff be compensated on a weekly basis.  Therefore, Plaintiff and Class Members are owed liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

40.     Under New York Labor Law, all 'manual worker(s)' must be paid on a weekly basis.  Pursuant to the New York State Department of Labor, manual workers include non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor.  Here, Plaintiff and Class members spent the majority of their day engaged in physical labor.

---

[1] *See Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

41.     Due to Defendant's improper, untimely bi-weekly payments, Plaintiff would struggle to timely pay his own bills.  Plaintiff would be forced to pay rent and credit-card bills late as he waited for his owed compensation to become available.  Class members would similarly struggle to timely pay debts due to Defendant's untimely compensation policies.

*Plaintiff's Individual Claims*:

42.     In or around January of 2020, Plaintiff brought to Defendant's attention misappropriation of city funds by Defendant's employees.

43.     Defendant's Store Location of 1973 38th St, Queens, NY 11105 exclusively serviced the needs produced by Defendant's contract with the city.  Pursuant to GPC's contract with the City, GPC is responsible for managing and stocking all vehicle-repair, replacement parts, battery recharging services, and preventive maintenance supplies, including, but not limited to tires, lubricants, antifreeze, special hydraulic fluids, and motor oil.  The total yearly revenue from this contract is approximately $265,000,000.00.

44.     Due to the incredible monetary incentives that Defendant receives from this contract with the City, Defendant has a vested interest in avoiding any scandal or revelation, which might jeopardize its continuation.

45.     Despite Defendant's incentives to avoid the appearance impropriety or theft of city funds, in January of 2020, Plaintiff reported to Defendant the misappropriation of city funds by Defendant's employees.   Defendant's employees, such as Mohabeer Deonauth and Michael Keanz, frequently billed the city for parts and repairs, which were taken for personal use.

46.     When Plaintiff reported this activity to Human Resources, he expected Defendant to conduct an investigation and to end these unlawful actions.  Instead, Defendant attempted to protect its lucrative contract by silencing and punishing Plaintiff.

47.    Shortly after making his complaint, Plaintiff began to feel Defendant's retaliatory actions.  For the seven (7) years preceding his complaint, Defendant always had a policy of not writing up tardiness, so long as an employee appeared within 15 minutes of his scheduled start time.  After Plaintiff's complaint that policy continued for everyone, except Plaintiff.  Plaintiff was targeted, unjustifiably berated, and written up for minor violations, which were not enforced against any other employee.

48.    After Plaintiff brought the misappropriation of funds to Defendant's attention, Plaintiff sought to take leave under the Federal Medical Leave Act, so as to take care of his newborn child.  Defendant, in an effort to encourage Plaintiff to quit, tried to force Plaintiff back to work, with a month remaining in his permitted leave.

49.    Though Plaintiff received raises on a yearly to semi-yearly basis from 2013 to 2020, shortly after Plaintiff brought the theft to Defendant's attention, he no longer received these annual raises.  Due to the failure to receive these raises, newer, less experienced employees began to earn more than Plaintiff.

50.    After informing Defendant of the theft from the city, Defendant began forcing Plaintiff into harder and more uncomfortable jobs, such as moving tires, boxes, and heavy parts by himself, for hours on end.

51.    Finally, in June of 2022, Management attempted to demote Plaintiff and to move him to a location much farther from his home than the location to which he was assigned, making it impossible for him to continue his employment.  As a consequence of all the adverse employment actions taken against Plaintiff, Plaintiff's employment with Defendant was constructively terminated.

52.     In or around July of 2022, Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

53.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

54.     At all relevant times, Defendant was and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

55.     At all relevant times, Defendant employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

56.     At all relevant times, Defendant had gross annual revenues in excess of $500,000.

57.     At all relevant times, Defendant had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs for all their hours worked, including overtime hours for hours worked over forty (40).

58.     Plaintiff is in possession of certain records concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs. Further records concerning these matters should be in the possession and custody of Defendant. Plaintiff intends to obtain all records by appropriate discovery proceedings

to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

59.     Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs for all overtime premiums when Defendant knew or should have known such was due.

60.     Defendant failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

61.     As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

62.     Due to the intentional, willful and unlawful acts of Defendant, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime premiums, and an equal amount as liquidated damages.

63.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

64.     Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

65.     At all relevant times, Plaintiff and Class members were employed by the Defendant within the meaning of the NYLL, §§2 and 651.

66.    Defendant knowingly and willfully failed to pay Plaintiff and Class members the full amount wages owed, including overtime premiums for hours worked over forty (40), in violation of the NYLL.

67.    Defendant, in violation of NYLL 191, knowingly and willfully failed to pay Plaintiff and Class members in a timely manner, i.e., a weekly basis.

68.    Defendant failed to provide a proper wage and hour notice, at the date of hiring and annually thereafter, to all non-exempt employees per requirements of the NYLL.

69.    Defendant failed to provide proper wage statements with correct payment as required by NYLL § 195(3).

70.    Due to the Defendant's NYLL violations, Plaintiff and Class members are entitled to recover from Defendant their unpaid overtime premiums, reasonable attorneys' fees, interest, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

## VIOLATION OF NEW YORK LABOR LAW § 740

71.    Plaintiff realleges and reavers by reference all allegations in all the preceding paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

72.    At all relevant times, Plaintiff was an "employee" for purposes of § 740 of the NYLL.

73.    At all relevant times, Defendant was an "employer" for purposes of § 740 of the NYLL

74.     By its actions detailed above, Defendant violated § 740 of the NYLL. Defendant violated § 740 through adverse employment actions and retaliation caused by Plaintiff's reporting of misappropriation of client funds, including the New York City's funds.

75.     Due to the Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant: (1) back and front pay, (2) compensatory damages, (3) punitive damages, and (4) attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiff and Class members, respectfully request that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the labor laws in New York where Defendant has employees;

b.  An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  An award of unpaid wages and overtime premiums due under the FLSA and the NYLL;

d.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

e.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay overtime premiums, pursuant to 29 U.S.C. § 216;

f.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay all wages, including overtime pursuant the FLSA and NYLL;

g.  An award of damages due to Defendant's failure to timely pay wages pursuant to NYLL;

h.  An award of statutory penalties as a result of Defendant's failure to comply with the FLSA and NYLL;

i.  An award of statutory penalties as a result of Defendant's failure to comply with the FLSA and NYLL wage notice and wage statement requirements;

j.  An award of economic damages, compensatory damages, punitive damages, and all other penalties the Court deems appropriate as a result of Defendant's willful retaliatory conduct against Plaintiff, pursuant to the NYLL § 740;

k.  An award of pre-judgment and post-judgment interest, costs, and expenses of this action, together with reasonable attorneys' and expert fees;

l.  Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

m.  Designation of this action as a class action pursuant to FRCP 23;

n.  Designation of Plaintiff as Representatives of the Class; and

o.  Such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 8, 2022

Respectfully submitted,

By:   */s/ C.K. Lee*
C.K. Lee, Esq.
LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiff and the Class*